Case No. 24-7038, et al., Ronda L. Davis, et al., Jerome Gray, et al., Appellants v. District of Columbia, Ms. Wells for the Appellants, Ms. Johnson for the Attorney. Good morning to the judge, your honors. If he pleases the court, Adelson Francois, Director of the Civil Rights Clinic at Georgetown Law Center, introducing Anna Wells, Student Counsel, who will be presenting argument this morning. Thank you. Ms. Wells, please proceed when you're ready. Good morning, your honors. May it please the court. This case is about the meaning of the business necessity standard under Title VII's disparate impact provision. The district court made three errors of law in its analysis. First, the court wrongly defined necessity as reasonableness. To do so, the court imported a standard from the Seventh Circuit, which is inconsistent with precedent from this circuit, the Supreme Court, and the 1991 amendments to the Civil Rights Act. Second, the court erred in granting additional deference to the defendant due to its status as a government employer, which contradicts clear precedent in this circuit that Title VII applies equally to public and private employers. Third, even if this court accepts the reasonableness standard, the district court erred in its application of this standard by resolving genuine disputes of material fact, which is inappropriate at the summary judgment stage. For these three reasons, the court, we respectfully ask the court reverse with the finding that the district did not meet its burden on summary judgment on this record and remand for further proceedings. To my first point, this circuit established the standard for business necessity in Zubieta. Can I just take you out of order, actually? So just skip to the end for a second, just and then we'll see what happens. But at the last stage, let's just assume for these purposes, and obviously you have arguments that will resist the assumption, but just for these purposes, just bear with me. So let's just assume that we're at the last part of the inquiry where what we're asking is, is there an alternative that also meets the business necessity but without the same disparate impact? And it's the burden is on the plaintiffs to show that alternative, right? It's not on the employer. So, what is the alternative? The 2 alternatives we have proposed, the 1st is that the district could have. As is affirmatively authorized by DC regulations conducted a. Realignment analysis or disparate impact analysis and certified this plan with the relevant city bodies, and that this plan would have had a different impact. And our 2nd alternative is that the district could have pre prioritized rehiring the employees that were qualified for the position because of the 70 and 44 applied and only 17 or rehired. And so, through either of these alternatives, the district challenge employment action would have had a different impact and would have still achieved their goals. So, I guess I don't understand the 1st alternative. In a concrete way, let's just look at the 2nd 1 for now. So, on the 2nd, 1, what does it mean to prioritize? Because they did. I mean, the district makes the argument is brief. I think there's something to it that. There was a priority given to the existing employees. But you want something different. We disagree that there was that there's undisputed evidence that there was such a priority, given the fact that of the 44 who applied only the 17 were hired and in order to assess whether they were actually qualified for the position involves resolving a dispute of material fact, which is whether the has had the same roles and responsibilities as the and so we don't think that this would be a priority. So, I don't think that this alternative can be resolved on summary judgment. I guess I don't understand that because there could be a priority. I mean, apparently the priority for the existing folks. Wasn't high enough for you, because there could have been a priority and they didn't that still wouldn't necessarily mean that you rehire everybody. Right? Just conceptually that's got to be right. Correct? Your honor. So then what what is it? What is the actual alternative? We also suggest that instead of. Rehiring, they could have used this same formula of the existing and simply selected who to retain instead of firing the and then rehiring and that this would also have had a different disparate impact. However, if your honor is not persuaded by our alternatives, we understand and we are arguing that the district used the district court used the wrong standard and that. Under the correct standard, the defendant did not meet its burden at the 2nd step. But in order to get past summary judgment, I mean, you'd have to do enough to get. Pass summary judgment to begin with, right? Including. If unless you went on the business necessity part, the alternative would have to get past or 1 of the alternatives would have to get past. Correct, but it is our position that the defendant here did not meet their burden on proving business necessity because. That is a strong burden that the defendant has there and so we don't think it is necessary to reach the 3rd step. And how did they fall short on business necessity? It is our position that the standard for business necessity, which was established in Zubieta requires a defendant to introduce sufficient evidence so that. It demonstrates that the challenge practice is clearly related to the employer stated goals and this Zubieta standard relies on Griggs, which makes sense. Given that the 1991 amendments in section 3 codified the conception of business necessity, as was enunciated by the Supreme Court in Griggs. And this understanding of business necessity has been affirmed by the Supreme Court in both Smith and in Richie in Smith, which is an case. The court compared the stringency of title 7 to that of the, which can be satisfied. If an employer demonstrates reasonableness, while that title 7 cannot and in Richie in the concurrence, Justice Scalia agreed with Justice Ginsburg's description of the business necessity test as a demanding one. And so under this test, it is necessary to look at both the amount of evidence the defendant introduced and the fit between the means and the ends. And the district court erred in its application of this test by putting the burden on the plaintiff, for example, by criticizing the plaintiff for not introducing evidence that what the agency did here was unreasonable. And by conflating the means and the ends, because the agency's goals here were both to respond to budget cuts and improve operations. And so the question is, what evidence did the defendant produce to show that the elimination of the SSAs and SWAs was actually necessary for this goal? And they did not provide any such evidence. For example, the agency admits that it did not use a single uniform criteria test or requirement and has no further support for why eliminating these positions would actually serve its goals. If you look to the facts of Zubieta there, the employer provided higher compensation and benefits to non-Panamanian workers and Panamanian workers who became U.S. citizens as of a certain date, but not to those who became citizens later. And the employer stated goals there were retention and recruitment of employees, and this practice is arguably reasonable. However, this court rejected it as consistent with business necessity because the defendant there did not introduce evidence beyond its own belief that it was actually necessary to retain these particular workers compared to the plaintiffs, or that these workers would have left without the additional benefits, or that they wouldn't have been able to recruit the necessary workforce with the base salary. And so this is the same as our case here in that all the defendant introduced was its own conclusory statements that eliminating these positions would be necessary. And the district court used this lenient standard, which the district does not even defend. The district doesn't defend Seventh Circuit reasonableness standard, but instead turns to the Ward's Cove reasonableness standard. However, that standard is equally wrong for the same reasons as discussed earlier regarding the 1991 amendments and the understanding of the Supreme Court of the strength of this standard. And the district court used this standard because it claimed that RIFs and hiring practices should be treated differently, and that public and private employers should be treated differently. But neither of these claims have any basis. In terms of RIFs and hiring practices, there's no statutory basis in Title VII to treat these two employment practices differently. They're all listed in the statute and all subject to the same business necessity standard. And there are no D.C. Circuit cases that treat RIFs differently from hiring. For example, even Zubieta was a compensation case, which is a distinct employment practice and is treated the same as hiring cases. And other circuits treat RIFs the same as hiring. For example, in the Eighth Circuit in Allen v. Entergy, the court found that the employer met its burden on a RIF because it used the validated selection test to determine which employees to lay off when combining job positions and used the Griggs standard there. And so the district court also noted that it used a more lenient standard because of the fact that the employer here was a government employee. So I'm not sure the district court really did that. They pointed to the fact that it's a government employer, but I didn't read the district court to be saying that it was going to adopt a substantively more lenient standard as opposed to taking account of the fact that the considerations may be informed by the governmental context. Understood, Your Honor. And we agree that there are different considerations that can inform government versus private employers, but the district court on page 24 to 25 of its opinion noted that in the context of a government RIF, the district impact liability must be limited and then said that this court will do the same. And it is our position that this additional deference infected the entire analysis in both the choice of the more lenient reasonableness standard and in the district court's application of this standard, in that it accepts the goals here as reasonable goals without actually doing what the test requires, which is assessing whether the defendant produced sufficient evidence in order to demonstrate that the challenge implement practice, the elimination of the SSAs and SWAs, was actually sufficiently related to the employer's goals. And so this failure indicates its additional deference that it was granting. It is also important to note on that that at least 19 cases in this circuit have held that public and private employers received the equal amount of deference and the Supreme Court as well in Dauthard holding that Title VII applies equally to public and private employers, and neither of the cases which the district court relies on indicate any differently. And so because of the fact that the defendant here did not introduce any evidence beyond the fact that it says repeatedly in the JA that it was determined that this was necessary but does not show why this was determined or how it was determined or how the court chose to select over 70 of the most frontline workers to eliminate without any sort of analysis, this type of decision is the type of arbitrary decision which Title VII was designed to protect against. And so without meeting the defendant here was not able to meet its burden on summary judgment or on Title VII. And the 1991 amendments clearly emphasize that this is a burden of both production and persuasion and under the Gregg standard to show the relationship between the challenge employment practice and the employer's goals, and the defendant was not able to do so here. Make sure my colleagues don't have questions for you. Okay, we'll give you the balance of your time for rebuttal. Thank you, Your Honor. Thank you. Ms. Johnson. Good morning. May it please the court. The agency had two goals in conducting this RIF. The first was to satisfy a $1.3 million personnel budget cut that it was ordered to do, and the second was to reduce the amount of harm that that would do to the agency's functions. The employees keep saying that the agency's goal was to improve operations, and everyone agrees improving operations would have been great, but that wasn't the goal here. The goal was to survive a draconian budget cut caused by historic economic downturn, and the district has put on a lot of evidence as to why it selected the positions it selected for abolishment. First of all, the district has put on all of the statistics as to why it focused on agency programs. Agency programs was huge. It was half of the agency, and then it explained why two-thirds of the personnel in agency programs could not be touched, and the employees don't dispute that. They don't suggest that the agency could have cut social workers or could have cut the hotline workers or any of that. So then we look at this other large group of employees, the SSAs and the SWAs, and the agency did something that was fairly ingenious. It figured out that it could combine the very important duties that both groups of employees were performing into one and cut nearly half of them out of the budget. So that's what it did, and the agency has also put on evidence as to why it could not do that without abolishing those positions altogether and creating a new position and then making it easier for the qualified employees to slide into that. The SSAs were not qualified to perform the FSW functions. Their position description did not allow them to perform casework, and those without a bachelor's degree were not qualified to perform the SWA jobs. They wouldn't have been able to do the type of drafting of casework and drafting court reports, and it is extremely unlikely, and the employees do not argue, that if somehow the bachelor's degree requirement hadn't been included, that the FSWs would have been able to do the home visits. But I do want to talk about the Can I just first ask you, how would you define the business necessity test? What is the, I mean, we have a couple of cases in our circuit, but how would you describe, I guess, like a rule statement of what business necessity requires? So this circuit, as far as I can tell, has never established a test, but the test applied by the Supreme Court before Wards Cove, and you could take a Wards Cove. If you don't want to think about Wards Cove, you could ignore Wards Cove. After Wards Cove, the Supreme Court has applied the same test throughout, and it is this. The employer has the burden of establishing that its legitimate goals were significantly served by the challenged practice, even if those goals did not require that particular practice. This is the test that is articulated in Watson, which is before Wards Cove, is endorsed by Congress when they did the amendment in 1991. Watson was quoting NYCTA versus Beezer. So we have two Supreme Court cases with this test, and if you want to go further back and get to something that maybe isn't a plurality or isn't in a footnote, you can look at Albemeyer paper, where the Supreme Court said that the burden is established with evidence that the challenged practice is significantly correlated with the relevant job performance. And in this case, relevant job performance has to be translated into relevant goals, because all of these other cases, every single one except for the Abril Rivera case that I cite, involves an ongoing practice that are usually hiring criteria or promotional exams. But one-time RIF is a little different. It's significantly correlated with, stronger than the statutory language of consistent with? I mean, Congress used the To me, it sounds synonymous with significantly correlated. I think that there's a lot of different language that doesn't have its own, like, legal body of case law to say what it means. So the district court used reasonably tight fit. I think that's appropriate. I think that's the same. I think significantly correlated and significantly served by are similar. We do have Congress's assertion that it was trying to connect, it was trying to codify the pre-Wards Cove, at least. I think Wards Cove just reiterated these standards. Whatever they were intending to do, they used the words consistent with. They used the words consistent with, and those words mean something. In fact, they rejected, in the original versions, it was required by business necessity. And Congress couldn't pass that. So they had to water it down to consistent with business necessity. If you go all the way back to Griggs, it just says job-related and manifest relationship. In my opinion, these are all the same thing. I think these all sort of... Job-related and significantly correlated do not seem to me to be the same standard. I think manifest relationship and significantly correlated, maybe more so. But listen, the district argued and certainly would be content with a test that is not including significantly served by. It's just that if this court is concerned that the word necessary maybe means necessary, then there's a lot of reasons to know that it doesn't mean strictly necessary. And some of it is that even... Where are you getting the word necessary? So the appellants, in their opening brief, focus on this court's use of the word business necessity, and somewhere in there, I think either Davis 1 or Zubieta, it says necessary. And necessity and necessary are essentially the same word. You're getting from necessity. I just want to Correct. So Griggs used the word business necessity, which sounds strict. And then in the next sentence used the phrase job-related. And ever since then, for the last 50 years, scholars have been saying it's business necessity and job-related, the same thing. I think consistent with business necessity divides necessity into two different burdens. And that's what Congress did, right? So business necessity, right? The employer has to prove it's consistent with business necessity. And then to establish whether the practice was necessary, the employees need to show that there were alternatives. And together, those equal this sort of general necessary prompt. But I think consistent with business necessity at most, at most requires significantly correlated or significantly served by, and at least could just go to what Ricci said, which is related to job performance. But at the highest level, it would be some sort of tight fit. And listen, I will note like the district, we have a lot of reasons to care about what test this court articulates here, because we're going to have to conduct rifts in the future. And we don't want to have to look at race in advance. We know we're not allowed to do that. We don't want to be stuck in the Hobson's choice that's presented in Ricci. But in this case, we could satisfy any of these standards. We could satisfy something close to strict scrutiny. In this case, it's narrowly tailored. There was a very hard decision that needed to be made. We've put on a lot of evidence as to why we made the decision. Are you sure why you keep advancing a stricter standard then? I'm sorry? I'm not sure why you keep suggesting that we should adopt a stricter standard. Listen, the last thing I want to do is suggest that. I think that Ricci uses the words related to job performance. Texas Department of Health uses reasonable measurement of job performance. And Abreu Rivera, if this court is looking for a test that is articulated in the context of something that is not an ongoing practice, and it makes a big difference if it's an ongoing practice. Because if it's an ongoing practice, then you can go back and you can do validation studies and see whether it really served your goals. You can't do that for a one-time practice. In Abreu Rivera, FEMA decided to close a processing center in Puerto Rico. And because it was in Puerto Rico, it had a disparate impact. And Abreu Rivera applied a test where it said that all that FEMA had to show was that it served legitimate needs and that the decision was reasonable. We think that's the test. I mean, that's what we think this court should apply. But in response to this entire sort of mess that Congress created in 1991, when it purported to change the law, but really just left everything the same, we want to point out that the Supreme Court has never had a strict necessity test. That would be inconsistent with the plain language of the statute. It would be inconsistent with the words consistent with business necessity. It would write out the alternative employment prong entirely out of the statute if there was a strict necessity requirement. So, I mean, we would be perfectly happy with a based on or reasonableness test. But the most important thing for us is that the district not be placed in a position in the future where we have to comply with some sort of statistical metrics that require us to look in advance at who's going to be terminated, consider the racial makeup, and then make difference decisions. And I want to be clear, there's a lot of discussion in the opening brief about metrics and validation studies. And I've been very confused about what they're talking about. Like, what metrics? What tests? They've never said what the district was supposed to do. And finally, in the reply brief on page 24, they explain what it is they wanted the district to do. They say the district should have certified the RIF plan with adequate info to ensure that the plan took steps to reduce disparate harm. And that is exactly what Ricci says we are not allowed to do. That is discrimination based on race. So, whatever test this court ultimately articulates, if it chooses to articulate one, you think the facts are clear enough here that the court could, you know, be vague about it if it wanted to, but if it wants to articulate a particular test, it needs to be one that honors the risk that too stringent of a test would force the district to look at race before it conducts a RIF, which is what we can't do. I do want to talk about the alternative that the employees are proffering regarding considering additional employees for the FSW position. Because although they don't seem willing to say this explicitly, the only difference between the employees the district was willing to consider for the position and the employees the district found unqualified is the bachelor's degree requirement. And this court affirmed the disparate impact case on the bachelor's degree requirement in Davis 1. It found that it was a discrete practice and that it was full of separation for analysis, and the employees didn't dispute that. Not only that, if you were to add back in the people that the district hired for the FSW position, it would change the disparate impact statistics. I'm not sure the employees would be able to show a disparate impact, and they certainly have never tried. But finally, like I said, if this court wants to consider an alternative employment practice as a way to sort of backdoor in a claim that has already been, or summary judgment has already been affirmed, the district has offered ample evidence as to why the bachelor's degree was required. I do want to take a moment to just talk about a couple things that the employees have not pursued, not articulated, and we think are fully forfeited. The first is any claim about abolishment of the SWA position. They perpetually contend that these positions are interchangeable, and they've never looked at why the district needed to abolish those positions. We offered evidence as to why. The court could certainly reach the merits on that, but it's not needed. And then finally, with regard to the other employees, the ones that weren't the SSAs and SWAs, I'm not sure the employees are really pursuing this claim. They certainly haven't put any effort into it. They're not focusing on it. But with regard to the business justification prong of the business necessity test, the employer's burden, we think it is important that what the employer must justify be tailored to the employment practice that is being challenged. And the practice that the employees are challenging is the director of the agency asking his managers, what positions can we live without? What could we possibly do without here? And that we've amply justified because sometimes it's just common sense. That's something that Watson says. Sometimes the connection and the reason are self-evident. Those individual directors are the ones who knew what positions they could do without. If the employees want to challenge any of the three new service models that they don't talk about at all or any of the selections of other individual positions, then they need to challenge those as separate employment practices and prove that those had a disparate impact. Okay. Thank you. Thank you, counsel. Soles, I think you had about two minutes left. I'll give you two minutes for a rebuttal. Two points, your honors. First, on the standard, we do not argue for a strict necessity standard, but something that is more than reasonableness, which is the standard that was used by the district court and by the district in its brief, which is something akin to the standard of Subieta and Griggs. Second, on the district's goal here, because it's important in doing this analysis to understand the goal in order to assess whether the challenge employment practice was actually serving that goal, the opposing counsel claims it was not to improve operations. But if you look to the JA on pages 192, 1027, and 942, which is the memo requesting the RIF and the administrative order, the goals were to continue to improve outcomes for which calls for the teaming model and to for improved performance and outcomes and to provide best services and also to improve services. And so clearly the goal was not just to save money. And so it's important when looking at what the employer did to assess whether it was actually fit to serve that goal. And also the opposing counsel claims that they, because they eliminated entire positions, they don't have to justify this because it would be more difficult to isolate metrics as compared to laying off individuals. However, just because this RIF targeted positions doesn't mean that the employer here has no burden. The employer still has the same burden of production and persuasion and of business necessity here. And so the employer did not meet that burden. And regarding the other additional employees that were laid off, for the majority of those employees, the district's reasoning is the same in that they claim that it was determined a new model was needed. And so they had to lay off these employees. However, they equally do not justify the need for And so to conclude, this case comes down to two things. As a matter of law, the district court used the wrong standard. And as a matter of fact, the record shows that this agency's decision was arbitrary. And so for these reasons, we ask the court to reverse. Thank you. Thank you to you both. We'll take this case under submission.
judges: Srinivasan; Henderson; Rao